AO-106 (Rev: 06/09)-Application for Search Warrant

# UNITED STATES DISTRICT COURT

FILED

for the

Northern District of Oklahoma

JAN 2 2 2024

Mark C. McCartt, Clerk
U.S. DISTRICT COURT

| | | |
|---|---|---|
| In the Matter of the Search of | ) | Case No. 24-MJ-55-CDL |
| *Information Associated with User ID: 100087155449754,* | ) | |
| *and User ID: 100042358309503, that is Stored at a* | ) | **FILED UNDER SEAL** |
| *Premises Controlled by Meta Platforms, Inc.* | ) | |
| | ) | |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment "A." This court has authority to issue this warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A).

located in the __Northern__ District of __California__, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment "B"

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| - **21 U.S.C. §841** | - **Possession of Methamphetamine with Intent to Distribute** |
| - **18 U.S.C. 922(g)(1)** | - **Felon in Possession of a Firearm** |

The application is based on these facts:

**See Affidavit of Special Agent Rebecca Gionta, HSI attached hereto.**

☑ Continued on the attached sheet.

☐ Delayed notice of ____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Rebecca C. Gionta*

*Applicant's signature*

SA Rebecca Gionta, HSI

*Printed name and title*

Subscribed and sworn to by phone.

Date: January 22, 2024

*Judge's signature*

City and state: __Tulsa, Oklahoma__

CHRISTINE D. LITTLE, U.S. Magistrate Judge

*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **In the Matter of the Search of Information Associated with Facebook User ID: 100087155449754, and User ID: 100042358309503, that is Stored at a Premises Controlled by Meta Platforms, Inc.** | Case No. _____ <br><br> **FILED UNDER SEAL** |

**Affidavit in Support of an Application for a Search Warrant**

I, Special Agent Rebecca Gionta, being first duly sworn under oath, depose and
state:

**Introduction and Agent Background**

1. I make this affidavit in support of an application for a search warrant for
information associated with the Facebook account User ID: 100087155449754,
belonging to Lee Holt, and Facebook account User ID: 100042358309503, belonging
to Jennifer Harrington, that are stored at a premises owned, maintained, controlled,
or operated by Meta Platforms, Inc. ("Meta"), an electronic communications service
and/or remote computing service provider headquartered at 1601 Willow Road in
Menlo Park, California. The information to be searched is described in the following
paragraphs and in Attachment A. This affidavit is made in support of an application
for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to
require Meta to disclose to the government information (including the content of
communications) in its possession, pertaining to the subscribers or customers

associated with the User ID: 100087155449754 and User ID: 100042358309503, as further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review the information to locate the items described in Section II of Attachment B.

2. I am a federal law enforcement officer as defined under Rule 41(a)(2)(C) and am authorized to request this search warrant because I am a government agent who is engaged in enforcing federal criminal laws and I am within the category of officers authorized by the Attorney General to request such a warrant.

3. I have been a Special Agent with Homeland Security Investigations (HSI) since August of 2019. I have received basic criminal investigations and special agent training at the Federal Law Enforcement Training Center located in Glynco, Georgia. I am currently assigned to HSI Resident Agent-in-Charge Tulsa. I am assigned to investigate a wide variety of crimes ranging from narcotics to gangs, to child exploitation, to organized criminal enterprises. This includes investigations both at the state and federal level. Prior to my current assignment, I was a police officer in Illinois from January 2014 to August of 2019. I am familiar with how controlled substances are manufactured and distributed, including packaging, marketing, consumption, and transportation. In the course of such investigations, I have become familiar with different methods employed by drug traffickers who distribute controlled substances. I have also been involved in the execution of numerous search warrants on drug traffickers' residences, businesses, and mobile phones used by drug traffickers

to facilitate their illegal enterprises.  Through my training, education, and experience,
I have become familiar with the how illegal drugs are transported, stored, distributed,
methods of payment for such drugs, and the use of cellular telephones in such
activities.  I have received hundreds of hours in training from various Federal, State,
and local law enforcement agencies, and formal and informal training from more
experienced narcotic investigators.

4. I am familiar with the facts and circumstances of this investigation. The facts
set forth in this affidavit are based on my personal observations, knowledge obtained
from other law enforcement officers, my review of documents related to this
investigation, conversations with others who have personal knowledge of the events
and circumstances described herein, and a review of open-source information
including information available on the Internet. Because this affidavit is submitted
for the limited purpose of establishing probable cause in support of the application
for a search warrant, it does not set forth each and every fact I or others have learned
during the course of this investigation.

5. Based on my training, experience, and the facts as set forth in this affidavit,
there is probable cause to believe the identified Facebook accounts contain evidence
of violations of Title 21, United States Code § 841 (a)(1) (Possession of
Methamphetamine with Intent to Distribute) and Title 18, United States Code
§922(g)(1) (Felon in Possession of a Firearm) by Lee Holt and Jennifer Harrington.

3

## Jurisdiction

6. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A), & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

7. When the government obtains records pursuant to § 2703, or pursuant to a search warrant, the government is not required to notify the subscriber of the existence of the warrant. 18 U.S.C. § 2703(a), (b)(1)(A), (c)(2), and (3). Additionally, the government may obtain an order precluding Meta from notifying the subscriber or any other person of the warrant, for such period as the Court deems appropriate, where there is reason to believe that such notification will seriously jeopardize the investigation. 18 U.S.C. § 2705(b).

## Meta Background

8. Meta owns and operates Facebook, a free-access social networking website of the same name that can be accessed at http://www.facebook.com. Facebook users can use their accounts to share communications, news, photographs, videos, and other information with other Facebook users, and sometimes with the general public.

9. Meta asks Facebook users to provide basic contact and personal identifying information to Facebook, either during the registration process or thereafter. This information may include the user's full name, birth date, gender, e-mail addresses,

4

physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers. Each Facebook user is assigned a user identification number and can choose a username.

10. Facebook users may join one or more groups or networks to connect and interact with other users who are members of the same group or network. Facebook assigns a group identification number to each group. A Facebook user can also connect directly with individual Facebook users by sending each user a "Friend Request." If the recipient of a "Friend Request" accepts the request, then the two users will become "Friends" for purposes of Facebook and can exchange communications or view information about each other. Each Facebook user's account includes a list of that user's "Friends" and a "News Feed," which highlights information about the user's "Friends," such as profile changes, upcoming events, and birthdays.

11. Facebook users can select different levels of privacy for the communications and information associated with their Facebook accounts. By adjusting these privacy settings, a Facebook user can make information available only to himself or herself, to particular Facebook users, or to anyone with access to the Internet, including people who are not Facebook users. A Facebook user can also create "lists" of Facebook friends to facilitate the application of these privacy settings. Facebook accounts also include other account settings that users can adjust to control, for example, the types of notifications they receive from Facebook.

5

12. Facebook users can create profiles that include photographs, lists of personal interests, and other information. Facebook users can also post "status" updates about their whereabouts and actions, as well as links to videos, photographs, articles, and other items available elsewhere on the Internet. Facebook users can also post information about upcoming "events," such as social occasions, by listing the event's time, location, host, and guest list. In addition, Facebook users can "check in" to particular locations or add their geographic locations to their Facebook posts, thereby revealing their geographic locations at particular dates and times. A particular user's profile page also includes a "Wall," which is a space where the user and his or her "Friends" can post messages, attachments, and links that will typically be visible to anyone who can view the user's profile.

13. Facebook users can upload photos and videos to be posted on their Wall, included in chats, or for other purposes. Users can "tag" other Facebook users in a photo or video and can be tagged by others. When a user is tagged in a photo or video, he or she generally receives a notification of the tag and a link to see the photo or video.

14. Facebook users can use Facebook Messenger to communicate with other users via text, voice, and video. Meta retains instant messages and certain other shared Messenger content unless deleted by the user, and also retains transactional records related to voice and video chats, including the date of each call. Facebook users can also post comments on the Facebook profiles of other users or on their own

6

profiles; such comments are typically associated with a specific posting or item on the profile.

15. If a Facebook user does not want to interact with another user on Facebook, the first user can "block" the second user from seeing his or her account.

16. Facebook has a "like" feature that allows users to give positive feedback or connect to particular pages. Facebook users can "like" Facebook posts or updates, as well as webpages or content on third-party (*i.e.*, non-Facebook) websites. Facebook users can also become "fans" of particular Facebook pages.

17. Facebook has a search function that enables its users to search Facebook for keywords, usernames, or pages, among other things.

18. Each Facebook account has an activity log, which is a list of the user's posts and other Facebook activities from the inception of the account to the present. The activity log includes stories and photos that the user has been tagged in, as well as connections made through the account, such as "liking" a Facebook page or adding someone as a friend. The activity log is visible to the user but cannot be viewed by people who visit the user's Facebook page.

19. Facebook also has a Marketplace feature, which allows users to post free classified ads. Users can post items for sale, housing, jobs, and other items on the Marketplace.

20. In addition to the applications described above, Meta provides users with access thousands of other applications ("apps") on the Facebook platform. When a

Facebook user accesses or uses one of these applications, an update about that the user's access or use of that application may appear on the user's profile page.

21. Meta also retains records of which IP addresses were used by an account to log into or out of Facebook, as well as IP address used to take certain actions on the platform. For example, when a user uploads a photo, the user's IP address is retained by Meta along with a timestamp.

22. Meta retains location information associated with Facebook users under some circumstances, such as if a use enables "Location History," "checks-in" to an event, or tags a post with a location.

23. Social networking providers like Meta typically retain additional information about their users' accounts, such as information about the length of service (including start date), the types of service utilized, and the means and source of any payments associated with the service (including any credit card or bank account number). In some cases, Facebook users may communicate directly with Meta about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users. Meta typically retains records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

24. As explained herein, information stored in connection with a Facebook

account may provide crucial evidence of the "who, what, why, when, where, and

how" of the criminal conduct under investigation, thus enabling the United States to

establish and prove each element or, alternatively, to exclude the innocent from

further suspicion. In my training and experience, a Facebook user's IP log, stored

electronic communications, and other data retained by Meta, can indicate who has

used or controlled the Facebook account. This "user attribution" evidence is

analogous to the search for "indicia of occupancy" while executing a search warrant

at a residence. For example, profile contact information, private messaging logs,

status updates, and tagged photos (and the data associated with the foregoing, such

as date and time) may be evidence of who used or controlled the Facebook account

at a relevant time. Further, Facebook account activity can show how and when the

account was accessed or used. For example, as described herein, Meta logs the

Internet Protocol (IP) addresses from which users access their accounts along with

the time and date. By determining the physical location associated with the logged IP

addresses, investigators can understand the chronological and geographic context of

the account access and use relating to the crime under investigation. Such

information allows investigators to understand the geographic and chronological

context of Facebook access, use, and events relating to the crime under investigation.

Additionally, location information retained by Meta may tend to either inculpate or

exculpate the Facebook account owner. Last, Facebook account activity may

9

provide relevant insight into the Facebook account owner's state of mind as it relates to the offense under investigation. For example, information on the Facebook account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

25. Therefore, Meta's servers are likely to contain all the material described above, including stored electronic communications and information concerning subscribers and their use of Facebook, such as account access information, transaction information, and other account information.

## Probable Cause

26. On August 29, 2023, Oklahoma Bureau of Narcotics Agents, along with the Collinsville Police Department and the Cherokee Nation Marshal Service, executed both Cherokee Nation and State of Oklahoma search warrants on a residence located at 117 N 21st St in Collinsville, Tulsa County, Northern District, Oklahoma. At approximately 7:15 a.m, Agents and Officers arrived at the residence and made entry. Lee Holt exited the residence first, followed by Alberto Campos, and finally, Jennifer Harrington, all without incident. Investigators located the following items inside of the residence:

**Southeast Bedroom of Harrington and Holt:**

> -Nine (9) baggies containing a crystal-like substance that field tested positive for methamphetamine found in a box on the dresser.

10

- One (1) jar containing a crystal-like substance that field tested positive for methamphetamine found on top of the dresser.

- Three (3) separate plastic containers that contained different types and colors of pills. Found on top of the dresser.

- One (1) zip-lock bag that contained approximately sixty (60) grams of green leafy substance. Found in a dresser drawer.

- Four (4) glass vials containing a liquid substance. Found on top of the dresser.

- Two (2) Digital scales found in the dresser drawer.

- One (1) Rossi .357 magnum with 6 rounds of ammunition found under the bed.

- One (1) Samsung Galaxy S23 smart phone with a blue case attributed to Lee Holt.

- One (1) Purple Motorola smart phone with a black case.

- Lee Holt did not claim ownership of said phone.  Device was found in proximity to controlled substances and a firearm in the Southeast bedroom shared by Lee Holt and Jennifer Harrington.

- $4,370 in U.S. Currency found on top of the dresser.

27. During the execution of the search warrants, Oklahoma Bureau of Narcotics Agents Winter and McClaren interviewed Lee Holt outside of his residence. Agents placed Holt in the front seat of Agent McClaren's vehicle for the interview. Agents

11

placed Holt in handcuffs behind his back throughout the interview. Agents identified themselves to Holt as Law Enforcement Officers with the Oklahoma Bureau of Narcotics. Agent Winter presented both search warrants to Holt when he asked about them. Agents' weapons remained holstered and secured throughout the interview. Agents made no promises to Holt and did not employ any threatening or coercive interview techniques. Agent McClaren addressed the fact that Holt had contact with law enforcement on multiple occasions and was aware of Miranda warnings. Agent McClaren advised Holt of his Miranda warnings verbally. Holt told Agents that he understood the warnings and agreed to speak with Agents.  The following information was obtained during his interview:

- When Agents identified themselves to Holt as law enforcement officers, Holt stated "My life is ruined then."
- Holt indicated that he used methamphetamine and had a methamphetamine problem.

The following statements were made to agents post-Miranda warnings:

- Holt told investigators that Jennifer Harrington was his girlfriend and that they had lived together for approximately four (4) years at the residence.
- Holt was unwilling to confirm his drug source to agents.
- Holt told investigators that he only used methamphetamine.

12

- Holt did not believe that the methamphetamine that he was getting was very pure.
  - Holt indicated that he did not use fentanyl.
- Holt claimed that the money located in the house was not from methamphetamine sales.
- Holt claimed that currently he did not know where to buy methamphetamine.
- Holt claimed that the methamphetamine in the house was there for a month.
- Holt stated," I am going to end of doing my life in prison for some stupid shit."
- Holt was stated that he was unaware of any guns in the house.
  - Holt stated that he didn't even use guns.
- Holt indicated that he didn't want to be disrespectful, but he was not willing to cooperate fully.
- Holt stated that Jennifer did not pick up methamphetamine for him.
- Holt stated that his phone was in the house with a blue cover.
- Holt stated "I'm going to die in fucking prison."
- Holt indicated that Jennifer wasn't doing anything.
- Holt indicated that Holt knew Campos through work.
- Holt admitted that he had done time in multiple states.
- Holt told agents that he had previously eluded police and destroyed evidence in Washington County, Oklahoma.
- Holt told agents that Jennifer was also a convicted felon.

13

- An interview was not conducted with Harrington.

28. Agents looked up Lee Holt and Jennifer Harrington's criminal history and found they are both convicted felons. Most recently, a Tulsa District Court found Holt guilty in Tulsa County Case CF-2017-3457 for Possession of CDS with Intent to Distribute – Methamphetamine and Possession of a Firearm AFCF in June of 2019. A Tulsa District Court found Harrington guilty in Tulsa County Case CF-1997-2802 for Possession of CDS with Intent to Distribute – Methamphetamine in November of 1997. ATF Special Agent Jon Butler, an Interstate nexus expert, examined the Rossi .357 revolver and the ammunition recovered from Harrington and Holt's bedroom on September 11, 2023. He found that both the revolver and the ammunition had traveled in interstate commerce. Both Lee Hold and Jennifer Harrington were released from custody shortly after their arrest on August 29th, 2023. As of December 2023, Agents believe that Lee Holt and Jennifer Harrington are currently living together at, 117 N. 21st Street, Collinsville, Tulsa County, Northern District of Oklahoma. Based on my training and experience it is indicative of the distribution of controlled substances when multiple different types of controlled substances, in multiple baggies, digital scales, and large amounts of cash are near each other. Additionally, beginning in June of 2023, and utilizing a confidential informant, agents conducted two (2) undercover narcotics buys involving a known drug dealer, Michael Leach. Agents obtained a GPS tracker warrant on Leach's vehicle from the District Court of Rogers County. Using that GPS data, agents learned that Leach

14

stopped at Lee Holt and Jennifer Harrington's residence nine (9) times, all for short durations, between June and July of 2023.

29. In November and December 2023, Agents obtained federal search warrants from the Northern District of Oklahoma for both Lee Holt's and Jennifer Harrington's cellphones under case numbers 23-MJ-659-JFJ and 23-MJ-697-SH, respectfully. Agents reviewed the content of the cellphones and learned that both Lee Holt and Jennifer Harrington utilized Facebook Messenger, along with text messages, to conduct narcotic purchases, sales, and deliveries.

30. In reviewing Lee Holt's cellphone, agents learned that Lee Holt had recently acquired this phone on August 19, 2023, ten days before agents executed the search warrant. On the device, agents located text messages and his Facebook user ID: 100087155449754 listed under accounts. On August 22, 2023, Holt is messaging with Yvette to discuss purchasing "shoes" that Holt wears "once every few months" for $1,000. Three days later, Yvette messages Holt to discuss purchasing a "car" but she's $700 short. Holt tells Yvette that Harrington is going to bring the needed money to her. Holt then warns Yvette to watch out for scammers and to be aware the danger of being robbed on one of their deals. On August 24, 2023, Holt is messaging with "Mike L" discussing purchasing a "zip" for $325. A "zip" is a common term used in drug transactions to reference one ounce. Additionally, on July 25, 2023, Holt and Harrington discussed Holt's phone being cut off and to contact Yvette.

15

31. In reviewing Jennifer Harrington's phone, agents located text messages, Facebook messages, and Harrington's Facebook user ID: 100042358309503 listed under social media accounts. Agents learned that Holt also used a Facebook account to message Harrington. And on August 21, 2023, Holt messaged Harrington a photograph of what appears to be methamphetamine saying, "look what I found in the driveway." On August 25, 2023, Holt messaged Harrington to drop off some "chili" at Yvette's home. On August 26, 2023, Harrington is messaging with "Val" and says, "So somebody was talking to [Holt] in code and said chili and then I showed up with some chili and they're like what." And "I told her chili is not a word to use maybe like house or apartment perhaps." On August 5, 2023, Harrington and Valerie Mangimele discussed whether Alberto Campos, who was living with Holt and Harrington at the time, was an undercover agent planted by the DEA. Agents also located a Facebook message from Harrington's daughter, Keri, dated June 30, 2023, which said that she knew Harrington was still using drugs, and that Harrington and Holt had different people always coming and going from their home. Agents located Facebook messages from August 14, 2023, from a Jessica Olson, who contacts Harrington to try and sell some Morphine and Somas she cannot take.

32. Based on my training and experience, I know dealers and users of controlled dangerous substances will often use code words or terms to refer to substances, weights, and drug deals, to conceal their activity from Law Enforcement. I know that drug dealers will often use different methods of communication to arrange and

16

negotiate drug deals. Some common methos are text messaging, Facebook messaging, and phone calls. Based on the facts presented and my training and experience, there is probable cause to believe that evidence of violations of 21 U.S.C. §841 – Possession of Methamphetamine with Intent to Distribute and 18 U.S.C. §922(g) – Felon in Possession of a Firearm, will be located in the Facebook accounts of Lee Holt and Jennifer Harrington.

### Information to be Searched and Things to be Seized

33. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant. The government will execute this warrant by serving it on Meta. Because the warrant will be served on Meta, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

34. I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Meta to disclose to the government digital copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

35. In conducting this review, law enforcement personnel may use various methods to locate evidence and instrumentalities of the crime(s) under investigation, including but not limited to undertaking a cursory inspection of all information within the account described in Attachment A. This method is analogous to cursorily inspecting all the files in a file cabinet in an office to determine which paper evidence is subject to seizure. Although law enforcement personnel may use other methods as well, particularly including keyword searches, I know that keyword searches and similar methods are typically inadequate to detect all information subject to seizure. As an initial matter, keyword searches work only for text data, yet many types of files commonly associated with e-mails, including attachments such as scanned documents, pictures, and videos, do not store data as searchable text. Moreover, even as to text data, keyword searches cannot be relied upon to capture all relevant communications in an account as it is impossible to know in advance all of the unique words or phrases investigative subjects will use in their communications, and consequently there are often many communications in an account that are relevant to an investigation but do not contain any searched keywords.

**Conclusion**

36. Based on the information above, I submit that there is probable cause to believe that there is evidence of violations of Title 21, United States Code § 841 (a)(1) (Possession of Methamphetamine with Intent to Distribute) and Title 18,

18

United States Code §922(g)(1) (Felon in Possession of a Firearm) associated with the Facebook accounts described in Attachment A.

37. I request to be allowed to share this affidavit and the information obtained from this search (to include copies of digital media) with any government agency, to include state and local agencies investigating or aiding in the investigation of this case or related matters, and to disclose those materials as necessary to comply with discovery and disclosure obligations in any prosecutions from this matter.

Respectfully submitted,

*Rebecca C. Gionta*

Rebecca Gionta
Special Agent
Homeland Security

Subscribed and sworn to by phone on January __22__, 2024.

CHRISTINE D. LITTLE
UNITED STATES MAGISTRATE JUDGE

19

## ATTACHMENT A

### Property to be Searched

This warrant applies to information associated with the Facebook account belonging to Lee Holt, Facebook User ID: 100087155449754, and information associated with the Facebook account belonging to Jennifer Harrington, Facebook User ID: 100042358309503, that is stored at a premises owned, maintained, controlled, or operated by Meta Platforms, Inc., a company headquartered in Menlo Park, California.

## ATTACHMENT B

### Particular Things to be Seized

**I.    Information to be disclosed by Meta Platforms, Inc. ("Meta")**

To the extent that the information described in Attachment A is within the possession, custody, or control of Meta, regardless of whether such information is located within or outside of the United States, including any messages, records, files, logs, or information that has been deleted but is still available to Meta, or has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Meta is required to disclose the following information to the government for each user ID listed in Attachment A:

A. All business records and subscriber information, in any form kept, pertaining to the Accounts, including:

1.    All contact and personal identifying information, including full name, user identification number, birth date, gender, contact e-mail addresses, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.

2.    All profile information; News Feed information; status updates; videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings;

rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications;

3. All records or other information regarding the devices and internet browsers associated with, or used in connection with, that user ID, including the hardware model, operating system version, unique device identifiers, mobile network information, and user agent string;

4. All IP logs, including all records of the IP addresses that logged into the account;

5. The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

6. All privacy settings and other account settings, including privacy settings for individual Facebook posts and activities, and all records showing which Facebook users have been blocked by the account;

7. All past and present lists of friends created by the account;

8. The types of service utilized by the user;

9. All associated logs and metadata;

B. All content, records, and other information relating to communications sent from or received by the Accounts from June 1, 2023, to present, including but not limited to:

1.  The content of all communications sent from or received by the Account, including direct and group messages, and all associated multimedia and metadata, including deleted and draft content, if available;

2.  All activity logs for the account and all other documents showing the user's posts and other Facebook activities from June 1, 2023, to present.

3.  All photos and videos uploaded by that user ID and all photos and videos uploaded by any user that have that user tagged in them from June 1, 2023, to present, including Exchangeable Image File ("EXIF") data and any other metadata associated with those photos and videos;

4.  All other records and contents of communications and messages made or received by the users from June 1, 2023, to present, including all Messenger activity, private messages, chat history, video and voice calling history, and pending "Friend" requests;

5.  All "check ins" and other location information;

6.  All records pertaining to communications between Meta and any person regarding the user or the user's Facebook account, including contacts with support services and records of actions taken;

C. All content, records, and other information relating to all other interactions between the Accounts and other Facebook users from June 1, 2023, to present, including but not limited to:

3

1.   All records of the account's usage of the "Like" feature, including all Facebook posts and all non-Facebook webpages and content that the user has "liked";

2.   All information about the user's access and use of Facebook Marketplace;

3.   All information about the Facebook pages that the accounts are or were a "fan" of;

D. All records of Facebook searches performed by the account from June 1, 2023, to present.

E. All location information, including location history, login activity, information geotags, and related metadata from June 1, 2023, to present.

Meta is further ordered to disclose the above information to the government within **14 days** after service of this warrant.

**II.    Information to be searched for and seized by the government**

All information described above in Section I that constitutes evidence of violations Title 21, United States Code § 841 (a)(1) (Possession of Methamphetamine with Intent to Distribute ) and Title 18, United States Code §922(g)(1) (Felon in Possession of a Firearm), including, for each account or identifier listed on Attachment A:

4

a. Communications between the user ID and others from June 1, 2023, to present.

b. Evidence indicating how and when the Facebook accounts was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crime under investigation and to the Facebook accounts owner;

c. Evidence indicating the Facebook account owner's state of mind as it relates to the crime under investigation;

d. The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s).

## Certificate of Authenticity of Domestic Records Pursuant to Federal Rules of Evidence 902(11) and 902(13)

I, _____, attest, under penalties of perjury by the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this certification is true and correct. I am employed by Meta Platforms, Inc. ("Meta") and my title is _____. I am qualified to authenticate the records attached hereto because I am familiar with how the records were created, managed, stored, and retrieved. I state that the records attached hereto are true duplicates of the original records in the custody of Meta. The attached records consist of _____

associated with the Facebook User ID: 100087155449754, belonging to Lee Holt, and User ID: 100042358309503, belonging to Jennifer Harrington. I further state that:

a.   All records attached to this certificate were made at or near the time of the occurrence of the matter set forth by, or from information transmitted by, a person with knowledge of those matters, they were kept in the ordinary course of the regularly conducted business activity of Meta, and they were made by Meta as a regular practice; and

b.   Such records were generated by Meta's electronic process or system that produces an accurate result, to wit:

6

1.  The records were copied from electronic device(s), storage medium(s), or file(s) in the custody of Meta in a manner to ensure that they are true duplicates of the original records; and

2.  The process or system is regularly verified by Meta, and at all times pertinent to the records certified here the process and system functioned properly and normally.

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.

_____     _____

Date                                      Signature

7